Argued December 15, 1932; affirmed January 24, 1933

McCULLEY *v.* HOMESTEAD BAKERY, INC.

(18 P. (2d) 226)

*Randall S. Jones,* of Portland (E. L. McDougal, of Portland, on the brief), for appellant.

*John A. Beckwith,* of Portland, for respondent.

BEAN, J.

This is a personal injury action. It was tried to the court and a jury, resulting in a verdict and judgment for plaintiff. Defendant appeals.

The accident occurred on October 29, 1930, about 10 o'clock a. m. in the city of Portland at the intersection of Sixty-seventh street and Thirty-seventh avenue. Sixty-seventh street runs in a northerly and southerly direction and has a hard surface of some kind. Thirty-seventh avenue runs in an easterly and westerly direction, and, at the time of the accident, had a surface, described as consisting of loose gravel and also as being a hard-packed dirt road. The plaintiff's witnesses testified that the avenue had been recently oiled; the defendant's driver testified to the contrary. The two thoroughfares were about the same width, 30 feet from curb to curb. Plaintiff was owner of the Ford roadster, which, at the time of the accident, she was operating, by her son, in a southerly direction on Sixty-seventh street, approaching the intersection. At the same time the defendant was the owner of a Dodge delivery truck, which it was operating, through its driver, in a westerly direction on Thirty-seventh

avenue, also approaching said intersection. A collision occurred between the two vehicles within the square of the intersection.

The plaintiff alleged that the defendant was negligent, first, in driving at a speed of 35 miles per hour; second, in failing to give the right of way to plaintiff's automobile; third, in driving the truck at a high and dangerous rate of speed, in a careless and unlawful manner, without due regard for the safety of the public or the plaintiff, and that said negligence was the cause of the collision; that as a result of the collision the plaintiff suffered injuries, disability, pain and permanent injury to her nervous system and also damages to her automobile.

The allegations of the complaint were denied by the answer. Defendant alleges the plaintiff was herself negligent in the following particulars: first, in failing to observe the traffic at said intersection and particularly the automobile of defendant; second, in operating plaintiff's automobile at a high and dangerous rate of speed under the circumstances; third, in failing to have plaintiff's automobile under control; fourth, in failing to yield the right of way to defendant's automobile. Defendant further alleged that plaintiff's recklessness, carelessness and negligence contributed proximately to the occurrence of the accident and injuries complained of by plaintiff. The new matter of the answer was put in issue by the reply.

■ The plaintiff's witnesses testified that the speed of the plaintiff's Ford roadster immediately prior to the collision was about 15 miles per hour; that the speed of the defendant's truck at the time was greater than the speed of the Ford. The defendant's testimony on these two points was that the speed of

the Ford as it approached the intersection was about 25 miles per hour and the speed of defendant's truck was about 20 miles per hour. The driver of plaintiff's Ford testified that after he entered the intersection he saw the defendant's delivery truck about 20 feet away and that he entered the intersection before the defendant's delivery truck. Each driver contended that he entered the intersection first. With this conflict in the testimony we do not have to deal, as the verdict of the jury has settled the question. Where there is testimony in favor of plaintiff upon the point in dispute, it is thereby eliminated.

■ Defendant assigns error of the court for the reason that plaintiff was allowed to testify concerning irrelevant, immaterial and prejudicial matters. Plaintiff testified as follows:

"Q. And this accident happened about a year ago, do you still have any pain?
"A. I suffered greatly, in fact I have a great deal more pain than just right at—it seems as I had to work in order to keep my family—"

The last part of the answer was objected to by counsel for defendant. The objection was sustained, and the witness was asked the following question:

"Q. Now, what family did you have?"
to which an objection was sustained. The testimony continued:

"Q. Now, did you do your work?
"A. After the accident, after I started back to work I had help from the women in the building, and I have an extraordinarily good boss who has been very easy with me, he understood my condition and he was very kind to me, and others were helping me get along, I had to earn my own living."

The defendant's counsel moved that the latter part of the answer be stricken. The court told the jury to disregard the latter part of the answer. The witness was asked:

"Q. You have no husband?

"A. Separated."

The court then stated that the question was irrelevant.

We do not think that there was any reversible error in the rulings of the court. It may be possible that the question of the ability of plaintiff to work had a bearing on the injury which she had received; otherwise it might be claimed that she was not so badly injured, as she was at work, and we are not certain but that she would have the right to explain the matter. The ruling was as favorable to defendant as defendant could expect.

■ The witness was then asked:

"Q. Do you know what your doctor and medical bill is?

"A. Over $75 for treatment and medicine, and I haven't been able to pay any of it."

The court, upon objection by counsel for defendant, said the answer was not responsive and instructed the witness to "just try to answer the questions that are asked of you." That part, as we understand, which was objected to was that she had not been able to pay any of the doctor's bill. It may be that when she paid it, it would have been less than the amount she stated. The answer was certainly not very prejudicial to the defendant and does not constitute reversible error.

She was then asked:

"Q. Well, what is your physical condition compared with immediately after the injury?

"A. Well, I am so much worse that I don't know how to just explain it, I am getting worse all the time and not able to work, I really shouldn't be working but it is necessary and I have to work."

And she stated the amount of her wages and explained that she worked a portion of the time.

■■ We find no reason for reversing the case on the rulings of the learned trial judge. The verdict should not be disturbed and a rehearing of the cause should not be granted except when the court has committed some error to the substantial prejudice of defendant, so that the defendant did not have a fair trial: *Archambeau v. Edmunson,* 87 Or. 476 (171 P. 186). Under Art. VII, § 3 of the constitution, providing that no question of fact submitted to a jury shall be reexamined by the court, the court is not authorized to set aside a judgment on the ground that the verdict was rendered under the influence of passion or prejudice, unless the court is satisfied that the defendant did not have a fair and impartial trial: *Hanson v. Johnson Contract Co.,* 117 Or. 541 (244 P. 875).

■ The trial court properly instructed the jury to disregard the irrelevant testimony. The error, if any, was thereby cured: *Egli v. Hutton,* 135 Or. 175 (294 P. 347); *State v. Shull,* 131 Or. 224 (282 P. 237, 71 A. L. R. 1498); *Thomas v. Smith-Waggoner Co.,* 114 Or. 69 (234 P. 814); *Pacific Livestock Co. v. Isaacs,* 52 Or. 54 (96 P. 460.).

In *Hendricks v. P. E. P. Co.,* 134 Or. 366 (289 P. 369, 292 P. 1094), the court ruled that it is only in the

most unusual instances, such as indicate prejudice or passion of the jury, that the verdict will be disturbed.

The trial court, who saw and heard the witnesses, was in a position to observe such proceedings and to know whether the defendant had a fair trial and whether the matters complained of, under the appellant's assignments of error, were sufficient to amount to an irregularity and whether the verdict was rendered under passion or prejudice of the jury, so as to warrant a new trial. After the statement of plaintiff that she had to work in spite of her injuries, the judge immediately admonished the jury as follows:

"I think probably the jury understands that in a case of this kind we are not concerned with the financial condition of the plaintiff, whether she has to work or doesn't have to work. You only have two questions to determine, who is responsible for the accident, and if the defendant is responsible, what the extent of the injuries to the plaintiff are. You are not in any way concerned with the previous financial condition of the plaintiff or whether or not she has to work for a living, that has nothing to do with this case,  *  *  *."

The learned trial judge further admonished the jury as follows: "You should weigh and consider the evidence in this case without regard to sympathy, prejudice or passion for or against either party to the action."

■ The defendant assigns error in regard to questions objected to which were propounded to two medical witnesses produced by plaintiff, whether a woman having an operation, such as the plaintiff had 14 years before the accident, was apt to receive more serious injuries in such an automobile accident than a normal person would. Dr. Ghormley answered "No." Dr.

Dudman's answer tended to show the affirmative. The pleadings made no claim for an aggravation of a previous condition. Plaintiff's counsel stated to the court and jury that no claim was being made for an aggravation. The court instructed the jury that no allowance could be made for such an aggravation.

The testimony tended to show that prior to the injury Mrs. McCulley "was a well, strong, able woman, and I was able to do heavy work, and I worked in the American Bank Building for three years and lost no time at my work." She had had an operation performed 14 years before the accident. She had since worked on a farm and had done such heavy work as pitching hay and also heavy lifting. The testimony in the case tended to show that her injury was distinct and separate from any effect of the operation performed a long time before. See *Guild v. Portland Ry. L. & P. Co.*, 64 Or. 570 (131 P. 310). The court was informed by defendant's counsel that defendant's physicians had examined Mrs. McCulley and nothing was said about a previous operation.

■ The law in effect when the accident occurred, prior to the enactment of chapter 360, Laws 1931, required drivers to give way at intersections to vehicles to the right, regardless of which entered the intersection first. Section 55-702, Oregon Code 1930. The driver of the Ford said he looked straight ahead, watching where he was going, but he saw the truck coming 20 feet east of the intersection. This indicates he could observe traffic approaching from his left and that a driver looking ahead had sufficient scope, without turning his head, to observe both to his right and left. It was for the jury to decide whether, under the cir-

cumstances, plaintiff was negligent: *Carlson v. Homestead Bakery* ante p. 323 (18 P. (2d) 244); *Stryker v. Hastie,* 131 Or. 282 (282 P. 1087).

Appellant cited *Dorn v. Clarke-Woodward Drug Co.,* 65 Or. 516 (133 P. 351), to show that plaintiff may not recover for an aggravation of his previous condition unless it is pleaded. In the case at bar the plaintiff has not made a claim for aggravation.

Appellant also cited *State v. Rader,* 62 Or. 37 (124 P. 195), as to the admission of some testimony, but that was a criminal case where the rules of law are more strictly applied.

■ Respondent moves for the assessment of the 10 per cent penalty as damages for delay caused by this frivolous appeal. It does not appear to the court that the appeal was taken in bad faith. It is evident that there was probable cause for taking the appeal, and apparently the appeal was taken in good faith. Therefore, such damages should not be allowed. Section 7-514, Oregon Code 1930; *Lewis v. Continental Casualty Co.,* 135 Or. 170 (295 P. 450).

The judgment of the circuit court is affirmed.

RAND, C. J., ROSSMAN and KELLY, JJ., concur.