GRIFFITH *v.* FEDERAL LAND BANK OF COLUMBIA.

No. 13219.  JULY 12, 1940.

*R. B. Lambert,* for plaintiff.

*Edwards & Edwards, Harry D. Reed,* and *J. S. Averill Jr.,* for defendant.

ATKINSON, Presiding Justice.  Mrs. K. H. Griffith brought suit against Federal Land Bank of Columbia, in which she sought to enjoin the bank from selling under a power certain lands claimed by her, but which were included in a deed to secure debt executed by her and her husband, A. M. Griffith, to the bank.  The gravamen of her complaint was that A. M. Griffith was the sole beneficiary of a loan to secure which the deed was made, and that the inclusion of certain of her property therein had the effect of making her security for her husband's debts.  Further allegations of her petition as amended were that the husband owed certain named debts to other persons, to pay which the money was borrowed from the defendant bank; and that M. Bullard was the agent of the Federal Land Bank, had knowledge of the purpose for which the money was borrowed, and persuaded her to sign the deed which included her property.  On the trial the judge directed a verdict in-favor of the bank.  The plaintiff's motion for new trial was overruled, and she excepted.  While the motion contains special grounds, none of these are referred to in the brief of the plaintiff.

"A married woman may borrow money for the purpose of paying debts of her husband, and give her note and mortgage therefor, and such a contract will be binding upon her, although the

lender may know, at the time the loan is made, that she is borrowing it for this purpose, if he is not the husband's creditor who is to be thus paid, and is no party to any arrangement or scheme between the husband and wife of which the borrowing of the money by her for such purpose is the outcome. *Chastain* v. *Peek,* 111 *Ga.* 889 (36 S. E. 967); *Rood* v. *Wright,* 124 *Ga.* 849 (53 S. E. 390); *Ginsberg* v. *Peoples Bank of Savannah,* 145 *Ga.* 815 (89 S. E. 1086); *Garrett* v. *Thornton,* 157 *Ga.* 487 (3) (121 S. E. 820); *Temples* v. *Equitable Mortgage Co.,* 100 *Ga.* 503 (28 S. E. 232, 62 Am. St. R. 326); *Nelms* v. *Keller,* 103 *Ga.* 745 (30 S. E. 572); *Johnson* v. *Leffer Co.,* 122 *Ga.* 670 (50 S. E. 488); *Jackson* v. *Reeves,* 156 *Ga.* 802 (120 S. E. 541)." The foregoing ruling is quoted from *Braswell* v. *Federal Land Bank of Columbia,* 165 *Ga.* 123 (139 S. E. 861).

Under no view of the case could the plaintiff prevail, without submitting to the jury some evidence having probative value which would have authorized a finding that M. Bullard was the agent of the Federal Land Bank of Columbia. There was positive testimony from a witness for the bank, that "Mr. Bullard was not employed by the bank, and did not represent the bank in any way. . . Mr. M. Bullard, of Buchanan, Georgia, was an attorney whose abstracts and certificate of title were acceptable to the bank. . . In all cases where the bank accepted abstracts prepared by Mr. Bullard, he was employed by and acting for the applicants." It is insisted, however, that the testimony of A. M. Griffith on that subject contradicted that quoted above. Griffith swore as follows: "I negotiated for this loan in question. I went to M. Bullard. He was the agent of the Federal Land Bank. That's what he told me. He is the man that got the loan. Mr. Bullard had the papers in his hands. He did the negotiations for the loan involved in the correspondence from the bank back and forth. M. Bullard handled the correspondence with the bank. He had been handling loans for the Federal Land Bank quite a while. I had talked to him about loans that I wanted to get. He had handled loans for a number of people. He carried out the details for the bank in other cases." The strongest portion of the foregoing excerpt is the statement of the witness that "He [Bullard] was the agent of the Federal Land Bank." Standing alone, the quoted words could be taken as a positive declaration based presumably on the wit-

ness's personal knowledge; but they do not stand alone. They are immediately followed by these words: "That's what he told me." Fairly construed, this means that the witness is testifying that Bullard told the witness that he (Bullard) was the agent of the Federal Land Bank. Agency can not be proved by the declaration of the alleged agent. *Grand Rapid Furniture Co.* v. *Morel,* 110 *Ga.* 321 (35 S. E. 312). It is mere hearsay, and has no probative value. *Barclay* v. *Waring,* 58 *Ga.* 86; *Eastlick* v. *Southern Railway Co.,* 116 *Ga.* 48 (42 S. E. 499); *Equitable Mortgage Co.* v. *Watson,* 119 *Ga.* 280, 282 (46 S. E. 440); *Moultrie Lumber Co.* v. *Driver Lumber Co.,* 122 *Ga.* 26 (49 S. E. 729).

Later, the same witness testified: "I said awhile ago that Mr. Bullard represents the Federal Land Bank of Columbia. He did, if anybody did. I know he did, because I asked him to get the loan for me, and he did. Nobody else was ever in it that I knew of." To testify that one represented a bank if anybody did is not the same as swearing that he did so represent it; but even so, to add, "I know he did, because I asked him to get the loan for me, and he did," takes from the previous statement whatever of value it contained, because he gives as the basis of his knowledge something that shows Bullard was not representing the bank. "By using intermediaries as channels of transmission for papers, relying upon their inspection of property and examination of titles, made at the borrower's instance, and forwarding the money through them also at his instance, the lender does not constitute them his agents to make the loan, and is not chargeable with the consequences of dealings between them and the borrower, whether those dealings be public or private, known or unknown. *Merck* v. *American Freehold etc. Co.,* 79 *Ga.* 213 .(2) (7 S. E. 265). See also *Bellerby* v. *Goodwyn,* 112 *Ga.* 306 (37 S. E. 376); *McCall* v. *Herring,* 118 *Ga.* 522 (3) (45 S. E. 442); 39 Cyc. 982." *Equitable Life Assurance Society* v. *Cochran,* 170 *Ga.* 270 (152 S. E. 248). Nor was the testimony of Mrs. Griffith, who, when referring to Bullard, swore, "I know he was engaged in making loans for the Federal Land Bank. I thought he was the only one in the county who was authorized to loan money for them," sufficient to carry the case to the jury on that issue. We judicially know that loans for or by the Federal Land Bank are not made in that way, but that under the act creating them it is the particular function of

the local association to receive applications for loans, which are forwarded to the land bank, which itself decides whether or not to make the loan. *Federal Land Bank* v. *Shingler*, 174 *Ga.* 352, 368-9 (162 S. E. 815). The only instance where the Federal land banks can make loans through agents is specific in section 801 of the act, to wit, when there are no national farm loan associations in the particular locality; and as to this the act (§ 803) further provides that "No agent other than a duly incorporated bank, trust company, mortgage company, or savings institution, chartered by the State in which it has its principal office, shall be employed under the provisions of section 801-806 hereof." U. S. C. A. title 12, chapter 7, § 803. See Worrell v. Federal Land Bank of Baltimore, ... Va. ... 3 S. E. 2d, 402, and cit. Under these circumstances it was not error to direct the verdict in favor of the bank, even if it be assumed that in other respects the plaintiff made a case entitling her to relief.

*Judgment affirmed. All the Justices concur.*